IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

RECEIVED

2006 JAN -6  P 3: 51

DEBRA P. HACKETT, CL"
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| AUTO-OWNERS INSURANCE COMPANY, a mutual insurance company incorporated in the State of Michigan, )<br><br>     Plaintiff, )<br><br>v. )<br><br>WIREGRASS PROPERTIES, INC., a corporation; THOMAS LEONARD, an individual; JOE HUGHES, an individual; FAYE HUGHES, an individual; TOM GASSETT, an individual; and PHYLLIS GASSETT, an individual. )<br><br>     Defendants. ) | CIVIL ACTION NO.: 1:05-cv-1082-T |

## PLAINTIFF'S RESPONSE AND BRIEF IN OPPOSITION TO DEFENDANT HUGHES' AND GASSETT'S MOTION TO STAY AND MOTION TO DISMISS (TREATED BY THE COURT AS MOTIONS FOR SUMMARY JUDGMENT)

**COMES NOW**, Plaintiff, Auto-Owners Insurance Company (Auto-Owners), and pursuant to the December 14, 2005, (Doc. 19) and December 20, 2005 (Doc. 23) orders of this Honorable Court, and files Plaintiff's response and brief in opposition to the motions to stay and motions to dismiss (treated as motions for summary judgment by the Court) heretofore filed in this action by Defendants, Joe Hughes and Faye Hughes (hereinafter collectively referred to as "Hughes"),on or about December 12, 2005, (Doc. 18) and by Tom Gassett and Phyllis Gassett (hereinafter collectively referred to as "Gassett") on or about December 19, 2005 (Doc. 22) as follows, to wit:

I

**FACTS**

This action styled <u>Auto-Owners Insurance Company v. Wiregrass Properties, Inc.,</u> <u>et als</u>, Case No. 1:05-cv-1082-T, is a declaratory judgment action wherein Plaintiff, Auto-Owners Insurance Company, seeks a determination that a policy of insurance issued to Wiregrass Properties, Inc. (Wiregrass Properties) does not provide liability insurance coverage to Wiregrass Properties or Thomas Leonard (Leonard) and that an insurance policy issued to Wiregrass Homebuilders, Inc. (Wiregrass Homebuilders) does not provide liability insurance coverage to Leonard for the claims, allegations, damages, and/or actions alleged in underlying actions styled <u>Joe Hughes and Faye Hughes the Global Group, Inc.,</u> <u>et als.</u>, Civil Action No. CV-04-106 (hereinafter sometimes referred to as "CV-04-106" and/or the "Hughes lawsuit") filed in the Circuit Court for Barbour County, Alabama and styled <u>Tom Gassett and Phyllis Gassett v. Global Group, Inc., et als.</u>, Civil Action No. CV-04-107 (hereinafter sometimes referred to as "CV-04-107" and/or the "Gassett lawsuit") filed in the Circuit Court for Barbour County, Alabama.  In support of this response and opposition, Plaintiff adopts by reference in its entirety Plaintiff's first amended complaint for declaratory judgment and all exhibits thereto heretofore filed in this action (Doc. 15).

The complaint, as amended, in the underlying Hughes lawsuit, CV-04-106, alleges breach of warranty (Count I), negligence and/or wantonness (Count II), fraudulent misrepresentation (Count III), breach of contract (Count IV), conversion (Count V), breach of an implied warranty of habitability (Count VI), conspiracy (Count VI sic), negligent and/or wanton supervision (Count VII), fraudulent misrepresentation (Count VIII), fraudulent

2

suppression (Count IX).    (Evidentiary Submission Exhibit "1"; Doc. 15, Exhibit "2").

Defendants Thomas Leonard and Wiregrass Properties, Inc., appear to be sued and

named as Defendants in CV-04-106 in Count VI(sic) conspiracy, Count VII negligent and/or

wanton supervision and Count IX fraudulent suppression. See, id. A third amendment to

the complaint was filed in CV-04-106 on or about August 1, 2005 alleging negligent and/or

wanton supervision (Count X), fraudulent suppression (Count XI), and conspiracy (Count

XII) against Defendant Robert Drell.  A copy of the third amendment to complaint filed in

the Hughes lawsuit is attached as part of Auto-Owners Evidentiary Submission Exhibit "1".

On or about December 19, 2005, the trial court in CV-04-106 granted Hughes' motion for

leave to amend the complaint.  The fourth amendment to complaint filed in the Hughes

lawsuit alleges slander/defamation (Count XIII) and slander of title (Count XIV).  A copy

thereof is also attached to Auto-Owners Evidentiary Submission Exhibit "1".

        The complaint, as amended, in the underlying Gassett lawsuit, CV-04-107, alleges

negligence and/or wantonness (Count I), fraudulent misrepresentation (Count II), breach

of contract (Count III), conversion (Count V), breach of an implied warranty of habitability

(Count VI), conspiracy (Count VI sic), negligent and/or wanton supervision (Count VII),

fraudulent misrepresentation (Count VIII), fraudulent suppression (Count IX).  (Evidentiary

Submission Exhibit "2"; Doc. 15, Exhibit "3").  Defendants Thomas Leonard and Wiregrass

Properties, Inc., appear to be sued and named as Defendants in CV-04-107 in Count

VI(sic) conspiracy, Count VII negligent and/or wanton supervision, and Count IX fraudulent

suppression. See, id.  A third amendment to the complaint was filed in CV-04-107 on or

about August 1, 2005 alleging negligent and/or wanton supervision (Count X), fraudulent

suppression (Count XI), and conspiracy (Count XII) against Defendant Robert Drell.  A

3

copy of the third amendment to complaint filed in the Gassett lawsuit is attached as part of Auto-Owners Evidentiary Submission Exhibit "1".

Both actions arise out of agreements for the construction of homes for Hughes and Gassett. See, Evidentiary Submission Exhibit "9" at p. 13, 62 and 91 and Exhibits "1" and "15" thereof; Evidentiary Submission Exhibits "14" and "15". The underlying Hughes lawsuit (CV-04-106) and underlying Gassett lawsuit (CV-04-107) have been ordered consolidated and set for trial in the Circuit Court of Barbour County for the trial term beginning February 7, 2006. A copy of the consolidation order in the Hughes lawsuit is attached as Exhibit "5" and a copy of the order setting the trial in the Hughes lawsuit for the trial term beginning February 7, 2006, is attached as Exhibit "6" to Auto-Owners' evidentiary submission. A copy of the consolidation order in the Gassett lawsuit is attached as Exhibit "7" and a copy of the order setting the trial in the Gassett lawsuit for the trial term beginning February 7, 2006 is attached as Exhibit "8" to Auto-Owners' evidentiary submission filed contemporaneously herewith.

As stated above, this is a declaratory judgment action wherein Auto-Owners seeks a determination that its policy of insurance issued to Wiregrass Properties, Inc. does not provide liability insurance coverage to Wiregrass Properties or Tom Leonard and that the policy of insurance issued to Wiregrass Homebuilders does not provide liability insurance coverage to Leonard for the claims, allegations, damages and/or actions alleged in the underlying Hughes lawsuit and Gassett lawsuit. Contrary to the apparent erroneous conclusions of counsel for Hughes and Gassett in filing their pending motions, this action is not limited to a request for a coverage determination regarding Auto-Owners' duty to defend as to particular damages or claims alleged in the underlying Hughes and Gassett

4

lawsuits. In addition, Auto-Owners' complaint and amended complaint herein plainly set forth that Auto-Owners seeks a determination that Wiregrass Properties and Leonard are not "an insured" under the Auto-Owners policies with respect to the conduct of the partnership or joint venture out of which the alleged liability in the underlying actions arise. (See, Doc. 15 at ¶11(c) and (d), ¶26, and ¶27(c) and (d)). For this reason alone, Defendants' motions are due to be summarily denied.

Attached to Auto-Owners' complaint and first amended complaint for declaratory relief and judgment filed in this action are copies of the pertinent portions of the Auto-Owners Insurance policies, as well as copies of the complaints, as amended, filed in the underlying Hughes lawsuit and Gassett lawsuit. See, Doc. 15, Exhibits "2" and "3"; Evidentiary Submission Exhibits "1" and "2". Auto-Owners adopts by reference herein Auto-Owners' complaint, and first amended complaint for declaratory relief and judgment and the exhibits thereto (Doc. 1 and 15). Auto-Owners has also submitted contemporaneously herewith in opposition to Defendant Hughes' and Gassett's motion copies of the pertinent Auto-Owners insurance policy forms and endorsements and the verifying affidavits of William E. Barrett, Jr., as well as a copy of the deposition of Thomas Leonard taken in the underlying actions. See, Auto-Owners Evidentiary Submission Exhibits "3", "4" and "9".

No motions are presently pending before the Court other than the motions to dismiss (being treated by the Court as motions for summary judgment) or, in the alternative, motions to stay filed by Defendants Hughes (Doc. 18) and Defendants Gassett (Doc. 22). It is undisputed that Hughes and Gassett are not insureds under the Auto-Owners Insurance policy which are the subject of this action; therefore, Hughes and

5

Gassett do not have standing to raise issues with regard to Auto-Owners' obligation to defend Wiregrass Properties and/or Leonard in the underlying actions.    Defendants Wiregrass Properties and Thomas Leonard have filed answers to Auto-Owners' complaint (Doc. 20 and 21).

In their motions to dismiss, Hughes and Gassett assert that "the insurance coverage issues raised by Auto-Owners Insurance Company are not ripe for determination", that it "would be inappropriate for this Court to entertain jurisdiction over this declaratory judgment action because there is no case or controversy between the parties".  (See, Docs. 18 and 22).  Hughes and Gassett acknowledge in their motions that "the duty to defend may technically be ripe", but nonetheless ask the Court to dismiss this declaratory judgment action in its entirety or stay it pending the outcome of the underlying Hughes and Gassett Barbour County lawsuits.  See, id.

The Commercial General Liability coverage of the Auto-Owners Insurance Company Tailored policies issued to Wiregrass Properties, Inc. (Doc. 15, Exhibit 1; Evidentiary Submission Exhibit "3"), and Wiregrass Homebuilders, Inc. (Doc. 15, Exhibit 4; Evidentiary Submission Exhibit "4") provide in pertinent part as follows:

### SECTION I - COVERAGES

### COVERAGE A.  BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1.    Insuring Agreement.**

a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result.  But:

6

(1)     The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

(2)     Our right and duty to defend end when we have used up the applicable limit of insurance in the payments of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

b.     This insurance applies to "bodily injury" and "property damage" only if:

(1)     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

(2)     The "bodily injury" or "property damage" occurs during the policy period.

c.     Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2.     Exclusions.**

This insurance does not apply to:

a.     "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b.     [as deleted and replaced by endorsement 55069(1-88)] "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

(1) Assumed in a contract or agreement that is an "insured contract". However, if the insurance under this policy does not apply to the liability of the insured, it also does not apply to such liability assumed by the insured under an "insured contract".

(2) That the insured would have in the absence of the contract or

agreement.

\*\*\*

j.    "Property damage" to:

(1)    Property you own, rent or occupy;

(2)    Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3)    Property loaned to you;

(4)    Personal property in the care, custody, or control of the insured;

(5)    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6)    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k.    "Property damage" to "your product" arising out of it or any part of it.

l.    "Property damage" to "your work" arising out of it or any part of it and including in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m.    "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

8

(1)    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2)    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n.    Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1)    "Your product";

(2)    "Your work"; or

(3)    "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

\*\*\*

## SECTION V - DEFINITIONS

\*\*\*

3.    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any one time.

\*\*\*

5.    "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a.    It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b.    You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

9

a.    The repair, replacement, adjustment or removal of "your product" or "your work"; or

b.    Your fulfilling the terms of the contract or agreement.

6.    "Insured contract" means:

a.    A lease of premises;

b.    A sidetrack agreement;

c.    Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d.    An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for such municipality;

e.    An elevator maintenance agreement;

f.    That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

An "insured contract" does not include that part of any contract or agreement:

a.    That indemnifies any person or organization for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

b.    That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(1)    Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

(2)    Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

10

c.    Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in b. above and supervisory, inspection or engineering services; or

d.    That indemnifies any person or organization for damage by fire to premises rented or loaned to you.

\*\*\*

9.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*\*\*

11.    a.    "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1)    Products that are still in your physical possession; or

(2)    Work that has not yet been completed or abandoned.

b.    "Your work" will be deemed completed at the earliest of the following times:

(1)    When all of the work called for in your contract has been completed.

(2)    When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

(3)    When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

c.    This hazard does not include "bodily injury" or "property damage" arising out of:

11

    (1)    The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the "loading or unloading" of it;

    (2)    The existence of tools, uninstalled equipment or abandoned or unused materials;

    (3)    Products or operations for which the classification in this Coverage Part or in our manual of rules includes products or completed operations.

12.    "Property damage" means:

    a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.    Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

\*\*\*

14.    "Your product" means:

    a.    Any goods or products, other than real property, manufactured, sold handled, distributed or disposed of by:

        (1)    You;

        (2)    Others trading under your name; or

        (3)    A person or organization whose business or assets you have acquired; and

    b.    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

    a.    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    b.    The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented

to or located for the use of others but not sold.

15.    "Your work" means:

    a.    Work or operations performed by you or on your behalf; and

    b.    Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

    a.    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

    b.    The providing of or failure to provide warnings or instructions.

***

## COVERAGE B.  PERSONAL AND ADVERTISING INJURY LIABILITY.

    1.    Insuring Agreement.

    a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' or advertising injury' to which this coverage part applies.  We will have the right and duty to defend any 'suit' seeking those damages.  We may at our discretion investigate any 'occurrence' or offense and settle any claim or 'suit' that may result.  But:

        (1)    The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); And

        (2)    Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or

services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A And B.

b.    This insurance applies to:

(1)    'Personal injury' caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

(2)    'Advertising injury' caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the 'coverage territory' during the policy period.

\*\*\*

## 2.    EXCLUSIONS

This insurance does not apply to:

(a)    "Personal injury" or "advertising injury":

(1)    Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of falsity;

(2)    Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(3)    Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured; or

(4)    For which the insured has

14

assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

\*\*\*

## Section II - WHO IS AN INSURED

1.   If you are designated in the Declarations as:

\*\*\*

c.   An organization other than a partnership or joint venture, you are insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2.   Each of the following is also an insured:

a.   Your employees, other than your executive officers, but only for acts within the scope of their employment by you. However, no employee is an insured for:

(1)   "Bodily injury" or "personal injury" to you or to a co-employee while in the course of his or her employment, or the spouse, child, parent, brother or sister of that co-employee as a consequence of such "bodily injury" or "personal injury", or for any obligation to share damages with or repay someone else who must pay damages because of the injury; or

(2)   "Bodily injury" or "personal injury" arising out of his or her providing or failing to provide professional health care services; or

(3)   "Property damage" to property owned or occupied by or rented or loaned to that employee, any of your other employees, or any of your partners or members (if you are a partnership or joint venture).

15

***

4.  Any organization you newly acquire or form, other than a partnership of joint venture, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization.  However:

    a.  Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

    b.  Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

    c.  Coverage B does not apply to "personal injury" or "advertising   injury" arising out of an offense committed before you acquired or formed the organization.

    No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

***

Endorsement CG 01 08 11 85 to the policies amends "Section II - WHO IS AN INSURED" as follows:

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**ALABAMA AND LOUISIANA CHANGES - WHO IS AN INSURED**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED   OPERATIONS   LIABILITY COVERAGE PART

16

RAILROAD PROTECTIVE LIABILITY COVERAGE PART

In WHO IS AN INSURED (Section II) the term "executive officer" means only a person holding any of the officer positions created by your charter, constitution or by laws.

See, Doc. 15 Exhibits "1" and "4"; Evidentiary Submission Exhibits "3" and "4".

In his deposition taken in the underlying Hughes lawsuit and Gassett lawsuit, Thomas Leonard testified:

Q.    State your full name for the record, please, sir.

A.    Thomas Foster Leonard.

Q.    Mr. Leonard, my name is Shane Seaborn. We met a few minutes ago. I, along with Lynn Jinks, represent Tom and Phyllis Gassett and Joe and Fay Hughes in a lawsuit that's been brought in Barbour County involving the construction of two homes down here in Houston County. I'm going to ask you a series of questions here today about your involvement in the construction and financing of those homes. And if at any time I ask you a questions you don't understand, if you'll just let me know. I'll be glad to rephrase it. It that okay?

A.    That's fine.

[Auto-Owners Evidentiary Submission Exhibit 9 at p. 6.]

***

Q.    Now, in these two separate lawsuits you've been sued individually and also Wiregrass Properties, Incorporated is named defendant. Do you own Wiregrass Properties, Incorporated?

A.    I do.

Q.    Are you the sole owner of that business?

A.    Yes, I am.

[Auto-Owners Evidentiary Submission Exhibit 9 at p. 7.]

***

17

Q.      Are you the sole owner of Wiregrass Home Builders?

A.      I am.

[Auto-Owners Evidentiary Submission Exhibit 9 at p. 8.]

***

Q.      I'm going to show you this document that appears to be an agreement
        between you and Global Group, Incorporated and Jarrett Palmer and
        ask you is that your signature on the bottom of that document?

A.      It is.

Q.      And, Mr. Leonard, just so I'm clear, what was your agreement with
        Global Group, Incorporated and Jarrett Palmer in regard to this
        agreement dated May 18th, 2004?

A.      This basically is a form agreement that I have where if I joint venture
        with anybody. And I say a joint venture. It's probably a mini-type
        joint. I don't loan them the construction money as such and say --
        and give them -- you've got the house so far, you've got $5,000
        coming and depend on -- for them to pay the bills. I pay all the bills.
        And when the house is through with -- Now, we have a lot of stop
        measures throughout this whole thing. First of all, they come in and
        do a budget and -- we do the budget and they get everything --
        actually, it's either a spec house or a sold house. And they give me
        all the information and we have kindly a guideline of -- but then we
        can -- that's what the people in Dothan do is keep those bills straight,
        pay the bills. And when it's over with, when the house is sold, we
        divide profits 50/50.

Q.      Just so I understand correctly, like on Plaintiff's Exhibit Number 1,
        which is an agreement between you and Jarrett Palmer and Global
        Group to provide financing on the house which I'm going to refer to as
        the Gassetts' home in Dothan, is my understanding correct, Mr.
        Leonard, that you're going to provide the financing for this project and
        in return Mr. Palmer and Global Group is going to provide the services
        ans skill and then once the project is complete y'all are going to split
        the profits 50/50/?

A.      That's exactly right. I act as -- just as a bank. The same thing with
        the bank. With one exception. I'm not going to give the builder
        money for him to pay the bills with because a lot of times the bills are

18

not paid.

[Auto-Owners Evidentiary Submission Exhibit 9 at p. 13.]

\*\*\*

Q.    Does the agreement on Plaintiff's Exhibit Number 1 between you and Jarrett Palmer and Global Group constitute the entire agreement as it relates to him building the house on Westbrook for the Gassetts?

A.    I still don't -- Are you saying would I -- is this agreement in effect or did I have a side agreement?

Q.    Yes, sir.  Is that the total --

A.    No.

Q.    That's the total --

A.    That's the total agreement.

[Auto-Owners Evidentiary Submission Exhibit 9 at p. 20.]

\*\*\*

Q.    Okay.  Other than what I'll refer to as financing and financial advice on the budget, does Wiregrass Properties or any of your companies provide any labor on the job site?

A.    No.

Q.    Do they provide any tools?

A.    No.

Q.    Any work crew at all from Wiregrass Properties would have gone on this job site?

A.    No.

Q.    Does Wiregrass Properties have any occasion to deal with the homeowner or purchaser directly?

A.    No.

[Auto-Owners Evidentiary Submission Exhibit 9 at p. 26.]

\*\*\*

Q.     In addition to the Gassett home, the Hughes home and I think the Etris home in Barbour County, did you have a similar agreement with Mr. Palmer and Global Group to finance a home in Barbour County?

A.     Etris, yes.

[Auto-Owners Evidentiary Submission Exhibit 9 at p. 36.]

\*\*\*

Q.     In addition to these -- the Etris, Hughes and Gassett and the Braxton Bend we've talked about, have you had any other business relationship at all with Jarrett or Warren Palmer?

A.     No, I have not.

Q.     Any other --

A.     Now, wait a minute. Hold on. He built a house at Midland City on my property under the same – but he did not sell it. And I had forgotten about that one. But he built a house out there before -- he had the house built before we ever had any problem.

[Auto-Owners Evidentiary Submission Exhibit 9 at p. 40.]

\*\*\*

Q.     I asked you about other business dealings with Global Group. Do you have any developments or projects ongoing, Mr. Leonard, that he's involved with indirectly in Orlando, Destin –

A.     No.

[Auto-Owners Evidentiary Submission Exhibit 9 at p. 42.]

\*\*\*

Q.     Do you know on the Gassett and Hughes home, Mr. Leonard, who actually got the license to build on those lots?

A.    I do not. I suppose Jarrett did.

Q.    When you entered into this contract or agreement with Jarrett on the Hughes and Gassett home, do you even know if he was a licensed contractor?

A.    Well, I never did see the license, but not this is the way the thing started. He come to my office and said that he had passed the test. He got his building license, oh, prior to me even talking to him. And he was telling me, he said, my daddy don't even have his license. He said, he's failed the test a couple of times and I passed it the first time. I said, well, that's real good, because I remember that. Now, as far as him telling me to bring his license in and let's put I here, no, I do not.

[Auto-Owners Evidentiary Submission Exhibit 9 at p. 55.]

***

Q.    Mr. Leonard, I'm going to show you what I've marked as Plaintiff's Exhibit Number 15. And I'll just try to go on through some of these documents. Is this another joint venture agreement that you had with Mr. Palmer on the Hughes' house?

A.    Yes. It appears that.

Q.    And the date on that document is June the 8th, 2004?

A.    Yes.

Q.    And was it the same type of partnership that y'all had before where you would provide financing and then he would pay you back plus interest and then y'all would split the profits?

A.    Yes, sir.

[Auto-Owners Evidentiary Submission Exhibit 9 at p. 62.]

***

Q.    As you look back on these agreements now, Mr. Leonard, would you have done something different as far as entering into those partnerships with Jarrett?

A.    If I was looking back again, sure, I wouldn't even have entered them.

21

[Auto-Owners Evidentiary Submission Exhibit 9 at p. 91.]

***

Q.      But just so I'm clear, you never had any direct dealing with the Hughes or Gassetts other than after the fact they came in your office about the lien?

A.      Absolutely right.

[Auto-Owners Evidentiary Submission Exhibit 9 at p. 95.]

***

Q.      When did you first have any contact with anyone at Skyscraper?

A.      I was in contact with Skyscraper right after we started to do business. And the reason I was in Skyscraper, they wanted to do some business in Florida with me.  They wanted to do some business here.

Q.      How did you get in touch with Skyscraper to begin with?

A.      Jarrett give me the card or give me the number.

[Auto-Owners Evidentiary Submission Exhibit 9 at p. 102.]

In their first amendments to the complaint in the Hughes and Gassett lawsuits, Plaintiffs allege that Thomas Leonard was acting as a principal or agent for the other named Defendants, said named Defendants being Global Group, Inc., d/b/a Global Development, Jarrett Palmer, Warren Palmer, IPI Skyscraper, and Wiregrass Properties, Inc. See, Doc. 15 at Exhibits "2" and "3". Likewise, Plaintiffs in the Hughes and Gassett lawsuits allege that in their first amendment to the complaint that Wiregrass Properties acted as principal or agent for the other named Defendants. See, id. In his deposition Mr. Leonard described his agreements regarding the Hughes and Gassett homes as being a joint venture, mini-joint, or partnership with Jarrett Palmer. See, Auto-Owners Evidentiary Submission Exhibit "9" at p. 13, 62 and 91. A copy of Mr. Leonard's deposition and the exhibits "1" and "15" thereto have been submitted with Auto-Owners' Evidentiary

22

Submission as Exhibit "9". In answers to interrogatories in the underlying Hughes and Gassett lawsuits, Wiregrass Properties, Inc., answered that it entered agreements with Global Group to finance the Hughes and Gassett homes. See, Evidentiary Submission Exhibits "10", answer 16(d) and Exhibit "11", answer 16(d). The Hughes and Gassetts also understood Leonard and/or Wiregrass Properties were partners with one or more of the Defendants. See, Evidentiary Submission Exhibit "12" at p. 156-157 and Exhibit "13" at p. 74-75.

Auto-Owners is currently providing a defense to Wiregrass Properties Inc., and Thomas Leonard in the Hughes lawsuit and the Gassett lawsuit under a full and complete reservation of rights under the policy issued to Wiregrass Properties, including without limitation, the right to withdraw the defense being provided. See, Doc. 15 at ¶13; see also, Doc. 20 at ¶13 and Doc. 21 at ¶13. As stated above, the insurance coverage issues referred to above and the obligations of Auto-Owners to either defend or indemnify Wiregrass Properties, Inc., or Thomas Leonard in the underlying Hughes and Gassett lawsuit are the subject of the above-captioned declaratory judgment action pending herein. Auto-Owners contends that its policy of insurance does not provide liability insurance coverage for the claims, damages and/or allegations asserted against Wiregrass Properties, Inc., or Thomas Leonard in the Hughes and Gassett lawsuits.

As stated above, this matter is before the Court on the motions to dismiss or stay filed by Gassett and Hughes. Doc. 18 and 22. The Court has ordered these motions treated as motions for summary judgment. Doc. 19 and 23.

## II.

## STANDARD OF REVIEW

23

Rule 56 of the *Federal Rules of Civil Procedure* concerning Summary Judgment states, in pertinent part:

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

F. R. Civ. P. 56(c). The Eleventh Circuit stated that "[s]ummary judgment is appropriate where there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Turnes v. AmSouth Bank, N.A., 36 F.3d 1057, 1061 (11th Cir. 1994). An issue of material fact is "genuine" only if "a reasonable trier of fact, considering the record evidence, could find for the non-moving party." Lee v. Etowah County Bd. Of Educ., 963 F.2d 1416, 1425 (11th Cir. 1992). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593 (11th Cir. 1995); Edwards v. Wallace Community College, 49 F.3d 1517, 1521 (11th Cir. 1995). A party may not defeat a motion for summary judgment simply by restating the allegations of the pleadings. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A court, ruling on a motion for summary judgment, must believe the evidence of the non-movant and draw all justifiable inferences from the evidence in the non-moving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to

judgment as a matter of law.  See Fed. R. Civ. P. 56(c).

      "An insurance company's duty to defend its insured from suit is usually determined by the language of the insurance policy and by the allegations in the complaint filed against the insured."  Auto-Owners Ins. Co. v. Toole, 947 F. Supp 1557 (M.D.Ala. 1996) (quoting, Alfa Mutual Ins. Co. v. Morrison, 613 So. 2d 381, 382 (Ala. 1993)); see also, Thorn v. American States Ins. Co., 266 F. Supp.2d 1346 (M.D. Ala. 2002); Ladner & Co., Inc. v. Southern Guaranty Ins. Co., 347 So. 2d 100, 102 (Ala. 1977).  Insurance companies have the right to limit their liability.  See Aetna Ins. Co. v. Pete Wilson Roofing & Heating Co., Inc., 289 Ala. 719, 272 So. 2d 232 (Ala. 1972).  Under Alabama law, the insured bears the burden of establishing coverage by demonstrating that a claim falls within the policy.  See Colonial Life & Acc. Ins. Co. v. Collins, 194 So. 2d 532, 535 (Ala. 1967).  However, the "insurer bears the burden of proving the applicability of any policy exclusion."  Auto-Owners Ins. Co. v. Toole, 947 F. Supp. 1557 (M. D. Ala. 1996).  If there is no ambiguity, an insurance contract must be enforced as written, and courts should not defeat expressed provisions in a policy, including exclusions from coverage, by making a new contract for the parties.  See Altiere v. Blue Cross and Blue Shield, 551 So. 2d 290, 292 (Ala. 1989).

### III.

### THERE IS NO BASIS FOR THE DISMISSAL OR STAY OF PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT OR FOR SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS

### A.    The Motions Of Defendants Hughes And Gassett Are Due To Be Summarily Denied

      As stated above, the party filing a motion for summary judgment has the burden of

properly supporting their motion for summary judgment and in submitting evidence demonstrating the absence of a genuine issue of material fact. In this case Defendants have made no submission in support of their motion and have rested solely on the allegations of their motions. Defendants have made no submission and Plaintiff, therefore, can only speculate upon what basis Defendants maintain Defendants have met "the exacting burden of demonstrating that there is no dispute as to any material fact in the case". State Auto Prop. and Cas. Co. v. Calhoun, 2005 WL 2406055 (M. D. Ala. 2005). Defendants Hughes and Gassett have filed their motions despite their acknowledgment that determination of the duty to defend is ripe for adjudication. (See, Doc. 18 and 22). Further, Defendant Wiregrass and Leonard have answered Auto-Owners' amended complaint admitting the Court's jurisdiction in this case.    (See, Doc. 20 and 21). Defendants Hughes and Gassett are the Plaintiffs in the underlying lawsuit and thus, these Defendants do not even have standing to raise ripeness or any other matter regarding the duty of Auto-Owners to defend Wiregrass Properties or Leonard. Defendants Hughes and Gassett's motions are, therefore, due to be summarily denied.

On occasion, this Court has ruled on an insurer's duty to defend, but refrained from making a determination on duty to indemnify. In Auto-Owners v. Toole, 947 F. Supp. 1557, 1565 (M.D. Ala. 1996) this Court concluded the issue of duty to defend was ripe but the issue of duty to indemnify was not timely because underlying liability had not been determined. This Court in Toole recognized that "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Toole, 947 F. Supp. 1557, 1556, quoting,

Maryland Cas. Co. v. Pacific Coal & Oil Company, 312 U.S. 270, 273, 61 S. Ct. 510, 512, 85 L. Ed. 826 (1941). In this case it is indisputable that the issue of Auto-Owners' duty to defend is ripe for adjudication; therefore, Defendants' motions with regard thereto is due to be summarily denied. In addition, Defendants Hughes and Gassett ignore that the issues in this case involve not only coverage questions as to covered claims and/or damages but also Auto-Owners' request for a determination that Wiregrass Properties and Leonard are not "an insured" with respect to the partnership and joint venture out of which the alleged liability arises and which were not shown as a named insured in the declarations of the policies. See, Doc. 15 at ¶11(c) and (d), ¶26 and ¶27(c) and (d); see, Evidentiary Submission Exhibit "9" at p. 13, 62 and 91. This coverage determination is determinative of the entire action and is ripe for adjudication.

As is more fully addressed in Section IV. A. of this brief, courts considering issues of status of "an insured" have addressed both the duty to defend and indemnification issues. Moreover, the orders of the trial court submitted with Auto-Owners' brief and evidentiary submission (Evidentiary Submission Exhibits "5"-"8") herein demonstrate that the underlying action is set for trial in less than 32 days. With the looming trial of the underlying actions and the preliminary stage of these proceedings, the Court should exercise its discretion and proceed with a ruling and determination with regard to Auto-Owners' duty to defend and indemnify as to those issues that are ripe and reserve ruling only as to those, if any, that the Court determines are contingent on the outcome of the underlying litigation. Again, Auto-Owners asserts that the issue of and a determination that Wiregrass and Leonard are not "insured" is ripe and dispositive of the entire action.

Defendants have failed to discharge their burden or make any showing of the

absence of a genuine issue for trial and Defendants' motions are, therefore, due to be summarily denied. Nonetheless, Plaintiff in the remainder of this response, brief and in its evidentiary submission demonstrates the basis for the relief requested, the existence of genuine issues and the reasons Defendants' motion are due to be denied. Certainly, in considering all the evidence in the record, the lack of any submission by Defendants, and drawing all reasonable inferences in favor of Auto-Owners, Defendants' motions are due to be denied.

## B.    Federal Jurisdiction Exists

Defendants Gassett and Hughes do not dispute and Defendants Wiregrass Properties and Leonard admit in their answers that this court has diversity jurisdiction of the above captioned action, Civil Action No. 1:05-cv-1082-T pursuant to 28 U.S.C. §1332. (See, Doc. 18; Doc. 20 at ¶'s 6 and 7; Doc. 21 at ¶'s 6 and 7; and Doc. 22). Defendants also do not dispute that the requisite amount is in controversy, or the propriety of venue. See, id.; see also, State Auto Prop. and Cas. v. Calhoun, 2005 WL 2406055 (M. D. Ala. 2005).

## C.    Plaintiff Properly Seeks Declaratory Relief In This Court

Alabama courts have recognized that insurers have compelling reasons to seek judicial determination of its liability under insurance policies and have further recognized that it is the duty of the judge to adjudicate the decisive issues involved in the controversy and to make binding declarations concerning such issues. See, Federated Guaranty Life Ins. Co. v. Bragg, 393 So. 2d 1386, 1389 (Ala. 1981). Alabama courts have stated declaratory relief is especially useful in insurance policy disputes and have stated that

28

neither party to an insurance contract should be compelled to wait until the events giving

rise to liability have occurred before having a determination of the rights and obligations

under the policy.  See, Id. at 1389.

Alabama federal courts have also addressed this issue. In Employers Mutual

Casualty Co. v. Evans, 76 F. Supp. 2d 1257 (N.D. 1999) the Court stated:

> "In all cases arising under the Declaratory Judgment
> Act, 28 U.S.C. §2201 (1988), the threshold question is whether
> a justiciable controversy exists." Atlanta Gas Light Co. v.
> Aetna Casualty and Surety Co., 68 F. 3d 409, 414 (11th Cir.
> 1995) (footnote omitted). The Constitution of the United States
> allows federal judicial power to extend only to actual "cases or
> controversies." U. S. Const. Art. III, §2; see also Atlanta Gas,
> 68 F. 3d at 414. "Whether such a controversy exists is
> determined on a case-by-case basis." Atlanta Gas, 68 F. 3d
> at 414, quoting, United States Fire Ins. Co. v. Caulkins
> Indiantown Citrus, 931 F. 2d 744, 747 (11th Cir. 1991).
>
> "Basically, the question in each case is whether the
> facts alleged, under all the circumstances, show that there is
> a substantial controversy, between parties having adverse
> legal interests, of sufficient immediacy and reality to warrant
> the issuance of a declaratory judgment." Maryland Casualty
> Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510,
> 85 L. Ed. 826 (1941).
>                                                   ***
>
> In Cincinnati Insurance Co. v. Holbrook, 867 F. 2d 1330
> (11th Cir. 1989), abrogated on other grounds, Wilton v. Seven
> Falls Co., 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed. 2d 214
> (1995), the Eleventh Circuit held that even though the liability
> issue had not yet been resolved in the state court, the federal
> courts were not automatically closed to the insurer seeking
> declaratory relief.  Rather, the federal court could determine
> any obligation on the part of the insurer to defend the insured
> in the state court case.  See, id. at 1333.
>
>                                                   ***

Id. at p. 1260-1262.

The [Federal] Declaratory Judgment Act is "'an enabling act which confers a discretion on the courts rather than an absolute right upon the litigant'". See, Coregis Ins. Co. v. McCollum, 955 F. Supp. 120, 122 (M. D. Fla. 1997), quoting, Wilton v. Seven Falls Co., 515 U.S. 277, 115 S. Ct. 2137, 2143 (1995). The Eleventh Circuit has, however, held that "the Declaratory Judgment Act . . . should be liberally construed to achieve the objectives of the declaratory remedy", which "objectives include affording one threatened with liability, but otherwise without a satisfactory remedy, an early adjudication of an actual controversy." Cameron & Barkley Co. v. Fabreeka International, Inc., 144 F. Supp. 2d 1382, 1384 (M. D. Ga. 2001). In this case, there is no pending litigation regarding the coverage issues which are the subject hereof.[1] The "Eleventh Circuit has recognized that 'declaratory judgment actions are routinely used by potential litigants to anticipate each others' claims.'" Id. It has been held in this Circuit that filing a complaint for declaratory relief before the other party files its own complaint is not necessarily inappropriate, and the Defendant in the declaratory judgment action cannot be heard to complain simply because it made the strategic decision to postpone filing its own complaint. See Id.

Admittedly, this court's decision to grant declaratory relief is discretionary, which has been construed to mean that the district court has a range of choices and that its decision

---

[1] The fact that the underlying Hughes and Gassett actions are pending in state court serve as no basis to stay or dismiss these proceedings. See, Peerless Ins. Co. v. Disla, 999 F. Supp. 261 (D. Conn. 1998)(the state suit involves the liability of multiple parties for injuries; it does not involve the insurance coverage issues presented in this declaratory judgment action. ... [and] this is not a situation where the insurance coverage issues would better be decided in the state court action, it is not even an issue in that proceeding); see also, Agora Syndicate, Inc. v. Robinson Janitorial, 149 F. 3d 371 (5th Cir. 1998) (district court erred in dismissing insurance company's declaratory judgment suit in deference to underlying liability case pending in state court in which the insurance company was not a party).

will not be disturbed as long as it stays within the range and is not influenced by any mistake of law.  See, Kern v. TXO Prod. Corp., 738 F. 2d 968, 970 (8th Cir. 1984).  An abuse of discretion has been held to occur in three principal ways: 1) when a relevant factor that should have been given significant weight is not considered; 2) when an irrelevant or improper factor is considered and given significant weight; 3) when all proper factors and no improper ones are considered, but the Court in weighing those factors commits a clear error of judgment.  Id. at 970.

There is no presumption in favor of abstention in declaratory actions generally, nor in insurance coverage cases specifically.  See, Government Employees Ins. Co. v. Dizol, 133 F. 3d 1220, 1223 (9th Cir. 1998) (en banc).  In Brillhart v. Excess Ins. Co. of America, 316 U.S. 491 62 S. Ct. 1173 (1942) the Supreme Court set forth the primary factors that should be considered in a district court's decision to entertain a claim for declaratory relief. Id. at 1225. Generally, a district court should avoid needless determination of state law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation. The district court cannot, however, decline to entertain such an action as a matter of whim or personal disinclination.  Id. at 1223, quoting, Public Affairs Assocs. v. Rickover, 369 U.S. 111, 112, 82 S. Ct. 580 (1962).

The factors in this case do not balance in favor of this Court's refusal to exercise discretionary jurisdiction.  Examination of the facts of this case and balancing the factors set forth in Wilton and Brillhart support this Court's exercise of discretionary jurisdiction. There is, in fact, no pending parallel state court proceeding.   If this Court refuses discretionary jurisdiction, Plaintiff will be forced into the wasteful prospect of commencing the declaratory judgment process anew in state court.  See, Agora Syndicate Inc. v.

Robinson Janitorial Specialists Inc., 149 F. 3d 371, 373 (5th Cir. 1998).    Thus,

considerations of judicial economy weigh in favor of, rather than against, this Court's

retention of discretionary jurisdiction.    The facts of this case also plainly demonstrate that

this was not a "reactive" declaratory judgment action by Plaintiff. Plaintiff's filing of this

declaratory judgment action is, in fact, indicative of Plaintiff's "good faith".    See, Davis v.

Cotton States Mutual Ins. Co., 604 So. 2d 354, 358 f. n. 2 (Ala. 1992).    There is simply no

basis or authority for the proposition that an insurer such as Plaintiff is barred from invoking

diversity jurisdiction to bring a declaratory judgment action against an insured on an issue

of coverage.    See, Government Employees Ins. Co. v. Dizol, 133 F. 3d 1220, 1225 (9th Cir.

1998).    The Court should, therefore, deny Defendants' Hughes and Gassett's motions to

dismiss/motions for summary judgment and should retain jurisdiction of this declaratory

judgment action for the purpose of determining Auto-Owners' obligation to provide a

defense and/or indemnity to Wiregrass Properties and Leonard.

Plaintiff has properly invoked the jurisdiction of this Court and there is no appropriate

basis for this Court to decline to decide the insurance coverage issues involved herein.

The following sections of this brief further demonstrate the substantive grounds upon which

the declaratory relief sought by Auto-Owners is appropriate.

## IV.

**SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS HUGHES AND GASSETT IS DUE TO BE DENIED AND, IN FACT, IS DUE TO BE GRANTED IN FAVOR OF AUTO-OWNERS INSURANCE AND AGAINST DEFENDANTS BASED ON THE FOLLOWING COVERAGE DEFENSES TO DEFENSE AND INDEMNITY**

**A.    The Hughes and Gassett Lawsuits Allege Conduct For Which No Person Or Organization Is An Insured Under The Auto-Owners Insurance Policy**

32

Section II of the Commercial General Liability Coverage of the Auto-Owners insurance policy provides the definition of an insured. This portion of the policy reads in part as follows:

### Section II - WHO IS AN INSURED

1.  If you are designated in the Declarations as:

    \*\*\*

    c.  An organization other than a partnership or joint venture, you are insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2.  Each of the following is also an insured:

    a.  Your employees, other than your executive officers, but only for acts within the scope of their employment by you. However, no employee is an insured for:

        (1)  "Bodily injury" or "personal injury" to you or to a co-employee while in the course of his or her employment, or the spouse, child, parent, brother or sister of that co-employee as a consequence of such "bodily injury" or "personal injury", or for any obligation to share damages with or repay someone else who must pay damages because of the injury; or

        (2)  "Bodily injury" or "personal injury" arising out of his or her providing or failing to provide professional health care services; or

        (3)  "Property damage" to property owned or occupied by or rented or loaned to that employee, any of your other employees, or any of your partners or members (if you are a partnership or joint venture).

            \*\*\*

4.  Any organization you newly acquire or form, other than a partnership of joint venture, and over which you maintain

33

ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a.    Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b.    Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c.    Coverage B does not apply to "personal injury" or "advertising    injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

Endorsement CG 01 08 11 85 to the policy amends "Section II - WHO IS AN INSURED" as follows:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ALABAMA AND LOUISIANA CHANGES - WHO IS AN INSURED**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED    OPERATIONS    LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

In WHO IS AN INSURED (Section II) the term "executive officer" means only a person holding any of the officer positions created by your charter, constitution or by laws.

See, Doc. 15, Exhibits "1" and "4"; Evidentiary Submission Exhibits "3" and "4".

Wiregrass Properties, Inc., and Wiregrass Homebuilders, Inc. are the sole named insureds under the respective policies of insurance. See, id. Under the Auto-Owners Commercial General Liability coverage no person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations. See, p. 34; infra. All of the claims alleged are with respect to the conduct of a partnership or joint venture which was not shown as a named insured in the declarations of the policies at issue. See, Doc. 15 at Exhibits "2" and "3", and Evidentiary Submission Exhibits "1" and "2"; see also, Evidentiary Submission Exhibit "9" at p. 3, 62, and 91 and Exhibits "1" and "15" thereto.

In their first amendments to the complaint in the Hughes and Gassett lawsuits, Plaintiffs allege that Thomas Leonard was acting as a principal or agent for the other named Defendants, said named Defendants being Global Group, Inc., d/b/a Global Development, Jarrett Palmer, Warren Palmer, IPI Skyscraper, and Wiregrass Properties, Inc. See, Doc. 15 at Exhibits "2" and "3", and Evidentiary Submission Exhibits "1" and "2". Likewise, Plaintiff's allege in their first amendment to the complaint that Wiregrass Properties and Leonard acted as principal or agent for the other named Defendants. In his deposition Mr. Leonard described his agreements regarding the Hughes and Gassett homes as being joint ventures, mini-joint, or partnership with Jarrett Palmer. See, Evidentiary Submission Exhibit "9" at p. 3, 62, and 91 and Exhibits "1" and "15" thereto; see also, Evidentiary Submission Exhibits "14" and "15". A copy of Mr. Leonard's deposition and the exhibits thereto have been submitted with Auto-Owners' evidentiary submission. See, Evidentiary Submission Exhibit "9".

Wiregrass Homebuilders, Inc., is not a named Defendant in the Hughes and Gassett lawsuits. (See, Doc. 15, Exhibits "2" and "3" and Evidentiary Submission Exhibits "1" and "2"). In the Hughes and Gassett lawsuits, Leonard is alleged to have been acting as a principal or agent for the other named Defendants. See, id. Under the policies issued to both Wiregrass Properties and to Wiregrass Homebuilders, executive officers and directors are insureds only with respect to their duties as officers or directors. See, p. 33, infra. Stockholders are insured but only with respect to their liability as stockholders and employees other than executive officers, are insured only for acts within the scope of their employment by the named insured. See, id. Because no liability of Thomas Leonard is alleged with respect to acts within the scope of his employment by Wiregrass Homebuilders or with respect to his duties as an officer, director or stockholder of Wiregrass Homebuilders, there is clearly no coverage and no obligation by Auto-Owners to defend or indemnify Mr. Leonard under the Auto-Owners insurance policy issued to Wiregrass Homebuilders. For the reasons that follow, even if such conduct were alleged by Leonard there would still be no coverage under either Auto-Owners policy for Leonard or Wiregrass Properties.

It is undisputed in this case that Wiregrass Properties is the only named insured under the insurance policy issued to Wiregrass Properties, Inc.[2] See, Doc. 15 Exhibit "1"; Evidentiary Submission Exhibit "3". The Auto-Owners insurance policies plainly provide that no person or organization is an insured with respect to the conduct of any current or

---

[2]It is also undisputed that Wiregrass Homebuilders, Inc., is the only named insured under the insurance policy issued to Wiregrass Homebuilders. See, Doc. 15, Exhibit "4"; Evidentiary Submission Exhibit "4".

past partnership or joint venture that is not shown as a named insured in the declarations. See, id.; see also, p. 34, infra. With respect to the Hughes and Gassett homes, it is uncontroverted that the liability alleged is with respect to the conduct of current or past partnerships or joint ventures not shown as a named insured in the Auto-Owners insurance policies. See, Doc. 15, Exhibits "2" and "3"; see also, Evidentiary Submission Exhibit "9" at p. 13, 62 and 91 and Exhibits "1" and "15" thereof.  Mr. Leonard openly acknowledged in his deposition that he entered into partnerships or joint venture agreements with Palmer regarding the Hughes and Gassett homes. See, Evidentiary Submission Exhibit "9" at p. 13, 62 and 91.  In answers to interrogatories in the underlying Hughes and Gassett lawsuits, Wiregrass Properties, Inc., answered that it entered agreements with Global Group to finance the Hughes and Gassett homes. See, Evidentiary Submission Exhibits "10", answer 16(d) and "11", answer 16(d).  As a matter of law, Wiregrass Properties and Tom Leonard are not "an insured" under the Auto-Owners insurance policies with respect to the conduct of said partnerships or joint ventures and  the liability alleged in the Hughes and Gassett lawsuits.

The U. S. Court of Appeals for the Fifth Circuit has held that identical language in an insurance policy precluded coverage for a named insured contractor whose liability arose out of a joint venture.  See, Bott v. J. F. Shea Co., Inc., 299 F. 3d 508 (5th Cir. 2002).  In Bott, Section II of a Commercial General Liability insurance policy, defining who is an insured, contained a final clause stating that "no person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a named insured in the declarations". Id. at 511. In Bott, the Court held that the named insured's liability arose out of the joint venture which was not an insured.  Id.  The

Court, therefore, held that liability arose out of the joint venture which was expressly excluded from coverage and, therefore, the named insured was not covered. Id. 511-512. Similarly, in Hardeman v. Commonwealth Lloyds Ins. Co., 1999, WL 16063 (Tex. App. 1999) a Texas appellate court held that a Commercial General Liability (CGL) insurer did not owe coverage to a named insured for "activities related to the joint venture." Also in Titan Indemnity Co. v. City of Brandon, 27 F. Supp. 2d 693 (S. D. Miss. 1997) the Court held a liability insurer did not owe coverage and a police officer was not insured under a policy providing that "no person or organization is an insured with respect to the conduct of any partnership, joint venture, multi-jurisdictional law enforcement organization ...". The court in Titan Indemnity stated that "by its plain terms, no coverage [was] provided" and, therefore, held that the insurer had no obligation to defend or indemnify the Defendant in the underlying action. Id. at 698.

In an unpublished opinion in Lawrence v. Grains Mut. Cas. Co., 2005 WL 1792228 (Ken. App. 2005), the appellant sought a declaration that one entity owned by the appellant and the named insured under a Commercial General Liability policy extended coverage to another business owned by the appellant. The subject Commercial General Liability coverage in Lawrence contained the exact policy language limiting the scope of coverage that is contained in the Auto-Owners policy. The Court in Lawrence expressly recognized that "the purpose of this term is to preclude precisely the type of coverage expansion the appellants were attempting to obtain in this case. The Court in Lawrence went on to state that in interpreting the scope of a policy, the Court must determine "the risk insured against" by the terms of the policy itself.

Like the insurers in above cited cases, Auto-Owners has produced the subject policy

of insurance and has pointed to the exclusionary language which negates any duty to defend or indemnify regarding the alleged liability of Wiregrass Properties and Leonard arising out of their actions and conduct in the joint venture or partnership upon which liability is based in the underlying Hughes and Gassett lawsuits. See, Doc. 15, Exhibits "1" and "4"; Evidentiary Submission Exhibits "3" and "4"; see also, p. 31, infra. There is no basis for the granting of Defendants' motions to dismiss/motions for summary judgment. As held by the courts cited above, the subject provision of the Auto-Owners Insurance Company insurance policies is not ambiguous. Consequently, the insurance contract must be enforced as written and the Court should not defeat expressed provisions in the policy by making a new contract for the parties. See, Altiere v. Blue Cross and Blue Shield, 551 So. 2d 290, 292 (Ala. 1989).  It is also presumed that the insured is familiar with the provisions of an insurance policy and acquainted with its contents. See, Kanellis v. Pacific Indem. Co., ___So. 2d___, 2005 WL 1253122 (Ala. Civ. App. May 27, 2005), citing, Hartford Fire Ins. Co. v. Shapiro, 270 Ala. 149, 155, 117 So. 2d 348, 354 (1960).

The motions of Defendants Gassett and Hughes to dismiss, and which have been converted into motions for summary judgment are, therefore, due to be denied. In fact, summary judgment or judgment on the pleadings is ultimately due to be entered in favor of Auto-Owners and against the Defendants.

**B.    The Allegations Of The Complaint Do Not Constitute An Occurrence And Do Not Invoke Coverage For A Defense Or Indemnity Under Section I, Coverage A**

Section I, Coverage A of the Auto-Owners Commercial General Liability Coverage (CGL) expressly states that the insurance applies to bodily injury and property damage only

if the bodily injury or property damage is "caused by an occurrence that takes place in the coverage territory" and only if "the bodily injury or property damage occurs during the policy period." The CGL coverage of the subject Auto-Owners policies of insurance define occurrence as an "accident including continuous or repeated exposure to substantially the same general harmful conditions." See, p. 11, infra. Section I, Coverage A, Exclusion 2.a. of the CGL coverage further states that, "this insurance does not apply to bodily injury or property damage expected or intended from the standpoint of the insured". See, p. 7, infra.

The gravamen of the Hughes and Gassett lawsuits is intentional fraudulent conduct and that the homes are defective and that Hughes and Gassett suffered contractual loss or pure economic loss.[3]  The CGL coverage is not a "warranty".  The CGL coverage does not insure against poor workmanship or defective work or product.  The CGL coverage only provides coverage for "bodily injury" or "property damage" occurring in the policy period and resulting from an occurrence, an accident, arising from such defects and/or poor workmanship. See, p. 6, infra. See, Berry v. South Carolina Insurance Company, 495 So. 2d 511 (Ala. 1985); USF&G v. Warwick Development Company, 446 So. 2d 1021 (Ala. 1984).  Intentional fraudulent conduct also does not constitute an occurrence and is excluded from coverage by Exclusion 2.a. See, p. 47, infra.

The complaint and claims of Hughes and Gassett in the underlying actions simply do not allege an "occurrence" (i.e. an accident) as defined in the Auto-Owners Insurance policies.  The CGL coverage of the Auto-Owners insurance policies does not provide liability coverage for damages because of liability assumed in a contract unless the

---

[3]Wanton conduct has been held by the Alabama Supreme Court to be the legal equivalent of intentional conduct.  See, McKenzie v. Killon, 887 So. 2d 861, 870 (Ala. 2004).

contract is defined as an "insured contract." See, p. 7, infra. Moreover, the CGL coverage also contains a contractual liability exclusion, [exclusion 2.b.] deleted and replaced by Endorsement 55069 (1-88). See, id. Also, Auto-Owners Insurance's policies do not provide coverage for purely economic loss occurring from a breach of contract and a breach of contract does not constitute an "occurrence" as defined in the CGL coverage. [4] See, American States Ins., Co. v. Martin, 662 So. 2d 245 (Ala. 1990); see also, Reliance Ins. Co. v. Wyatt, 540 So. 2d 688 (Ala. 1989).

The motions of Defendants Gassett and Hughes to dismiss, and which have been converted into motions for summary judgment are, therefore, due to be denied. In fact, summary judgment or judgment on the pleadings is ultimately due to be entered in favor of Auto-Owners and against the Defendants.

## C.  The Complaints Do Not Allege Covered Damages Because Of Property Damage, Advertising Injury Or Personal Injury

Even if this Court were to conclude that Wiregrass Properties and/or Leonard were "insured" (See IV. A. ) and that the complaint alleged an "occurrence", the complaints in the underlying actions do not allege a recoverable damage that could be covered under the Auto-Owners policies. As stated above, the Auto-Owners Commercial General Liability coverage only provides coverage for damages because of bodily injury, property damage, personal injury or advertising injury to which the insurance applies as defined and limited in the particular coverage contained in the policies. See, p. 6 and 13, infra.

The complaint does not allege covered damages because of "property damage" as

---

[4]The Hughes and Gassett lawsuits do not appear to allege breach of contract against Defendants Wiregrass Properties or Leonard.  See, Doc. 15, Exhibits "1" and "4"; Evidentiary Submission Exhibits "1" and "2".

defined in the Auto-Owners policies. All, or alternatively most, of the damages sought in the underlying Hughes and Gassett lawsuits are for the recovery of purely economic losses or damages to intangible property which do not, as a matter of law, fall within the definition of property damage. See, American States Ins. Co. v. Martin, 662 So. 2d 245 (Ala. 1995); see also, Doc. 15 at Exhibits 2 and 3.

It is undisputed that the Gassett complaint does not allege an advertising injury or personal injury offense and thus, does not claim damages because of advertising injury or personal injury. See, Doc. 15, Exhibits "1" and "4"; Evidentiary Submission Exhibits "1" and "4". Section I Coverage B, Personal and Advertising Injury Liability, of the CGL coverage only applies to "personal injury" caused by an offense arising out of the insured's business, excluding advertising, publishing, broadcasting or telecasting done by or for the insured, and to "advertising injury" caused by an offense committed in the course of advertising the insured's goods, products or services. Section I, Coverage B of the Auto-Owners Tailored Protection policy, exclusion 2.a., excludes coverage for personal injury or advertising injury arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity. To the extent Defendants contend the Hughes lawsuit or the Gassett lawsuit alleges personal injury, exclusion 2.a.(1) would also preclude coverage.

The motions of Defendants Gassett and Hughes to dismiss, and which have been converted into motions for summary judgment are, therefore, due to be denied. In fact, summary judgment or judgment on the pleadings is ultimately due to be entered in favor of Auto-Owners and against the Defendants.

**D.    Other Exclusions Appear Applicable to Exclude Coverage**

The CGL coverage of the Auto-Owners insurance policy contains the following exclusions:

j. "Property damage" to:

  (1) Property you own, rent or occupy;

  (2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

  (3) Property loaned to you;

  (4) Personal property in the care, custody, or control of the insured;

  (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

  (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k. "Property damage" to "your product" arising out of it or any part of it.

l. "Property damage" to "your work" arising out of it or any part of it and including in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

43

(1)    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2)    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n.    Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1)    "Your product";

(2)    "Your work"; or

(3)    "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

As stated above, the CGL policy is not a "warranty" and the CGL policy does not insure against poor workmanship or defective or work products. Damage or defects occurring prior to purchase, or before the operations were completed, is not covered under the products-completed operations hazard. Thus, property damage that occurred before operations were completed, while the property was owned by Defendants or, while the work was being performed or arising out of Defendants' operations is not covered. See, exclusion j(5) and (6). The Auto-Owners CGL policy excludes coverage for property damage to the "insured's work", the "insured's product", and "impaired property" that has not been physically injured arising out of a defect, deficiency, inadequacy or dangerous condition to the insured's work or product or caused by a breach of contract. See,

44

exclusions k, l and m.

The CGL policy is not a warranty and it does not insure poor workmanship or defects in construction that do not result in an occurrence causing "property damage" or "bodily injury" as defined in the policy. The gravamen of the complaints is that the homes were defective and contained poor workmanship and that Gassett and Hughes suffered contractual loss or pure economic loss. See, USF&G v. Warwick Development Company, 446 So. 2d 1021 (Ala. 1984); see also, Berry v. South Carolina Ins. Co., 495 So. 2d 511 (Ala. 1985). Thus, even if the Court concluded Wiregrass Properties and/or Leonard were insured and that the complaints alleged an occurrence which was not excluded, summary judgment in favor of Auto-Owners and against Defendants is due to be granted because the complaint does not allege a covered damage.

The motions of Defendants Gassett and Hughes to dismiss, and which have been converted into motions for summary judgment are, therefore, due to be denied. In fact, summary judgment or judgment on the pleadings is ultimately due to be entered in favor of Auto-Owners and against the Defendants.

## E.    Plaintiff's Complaint Does Not Allege Recoverable Damages Because of Bodily Injury

As stated above, Section I, Coverage A of the Auto-Owners Commercial General Liability Coverage expressly states that the insurance applies to bodily injury and property damage only if the bodily injury or property damage is "caused by an occurrence that takes place in the coverage territory" and only if "bodily injury or property damage occurs during the policy period." "Occurrence" is defined in the CGL coverage as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

45

Auto-Owners previously set forth in Section III. B of this brief the reasons this court should hold that the allegations in the underlying action do not allege an "occurrence". Although mental anguish has been interpreted to be a "bodily injury", mental anguish (i.e., bodily injury) that is not caused by an "occurrence" is not covered.

Additionally, the "zone of danger" test applied under Alabama law limits recovery for emotional injury to those plaintiffs who sustain a physical injury as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct. Alabama Power Co. v. Murray, 751 So. 2d 494, (Ala. 1999). See also, White Consol. Industries, Inc., v. Wilkerson, 737 So. 2d 447 (Ala. 1999). Thus, damages for mental anguish as to said claims are not, as a matter of law, recoverable in the underlying action and such an allegation invokes neither a duty to defend nor indemnify by Auto-Owners Insurance. The Alabama Supreme Court has held that damages for mental anguish, caused by an occurrence under an expressed warranty or non-intentional tort claim can be covered under a CGL policy. In order for there to be coverage, such damages must be accidental, occur in the policy period, and be proximately caused by the non-intentional tortious conduct or by the breach of expressed warranty. See, Gwin v. State Farm Fire & Casualty Co., 658 So. 2d 426 (Ala. 1995).[5] Thus, and in the alternative, and only if this Court concluded Wiregrass Properties and/or Leonard are "insured" (See, IV. A., infra) and that the Hughes and Gassett lawsuits alleged an occurrence and recoverable damages for mental anguish that took place in the coverage territory and occurred during the policy

---

[5]The Hughes and Gassett lawsuits do not appear to allege breach of warranty against Defendants Wiregrass Properties and Leonard. See, Doc. 15, Exhibits "1" and "4"; Evidentiary Submission Exhibits "1" and "2".

period, this Court should enter summary judgment that the only covered damages alleged in the underlying actions are damages for mental anguish resulting from non-intentional tort. See, f.n. 5; see also, American States v. Martin, supra; see also, State Farm v. Gwin, supra.

The motions of Defendants Gassett and Hughes to dismiss, and which have been converted into motions for summary judgment are, therefore, due to be denied. In fact, summary judgment or judgment on the pleadings is ultimately due to be entered in favor of Auto-Owners and against the Defendants.

**F.    The Owners Insurance Policies Do Not Provide Coverage For Bodily Injury Or Property Damage Expected Or Intended By The Insured**

The subject Auto-Owners insurance policy defines occurrence as an accident, including continuous or repeated exposure to substantially the same general harmful conditions. Section I, Coverage A, Exclusion 2.a. of the Commercial General Liability Coverage states that, "this insurance does not apply to bodily injury or property damage expected or intended from the standpoint of the insured".    Furthermore, intentional wrongful conduct does not constitute an occurrence, because it is not accidental in nature. See, Auto-Owners Insurance Company v. Townsend Ford, 656 So. 2d 360 (Ala. 1995). Under Alabama law punitive damages are not recoverable for negligence, or unintentional tortious conduct. Punitive damages are only recoverable if the conduct is intentional or wanton.  Wanton conduct has been held by the Alabama Supreme Court to be the legal equivalent of intentional conduct.  See, McKenzie v. Killion, 887 So. 2d 861, 870 (Ala. 2004).

The motions of Defendants Gassett and Hughes to dismiss, and which have been

47

converted into motions for summary judgment are, therefore, due to be denied. In fact, summary judgment or judgment on the pleadings is ultimately due to be entered in favor of Auto-Owners and against the Defendants.

## G.     Other Defenses To Coverage

In addition to the foregoing reasons, Auto-Owners has set forth in Auto-Owners' Amended Complaint for Declaratory Judgment additional secondary reasons compelling a finding of no coverage for defense or indemnity under the Auto-Owners policies. In setting forth the arguments herein, which Auto-Owners asserts are fully dispositive of Defendant's motions, Auto-Owners does not waive the grounds asserted herein, nor any other grounds set forth by Auto-Owners in support of its Complaint for Declaratory Judgment, as amended.

### V.

### CONCLUSION

For the reasons set forth in the foregoing brief, Defendant's motions to dismiss/motions for summary judgment are due to be denied. In fact, summary judgment or judgment on the pleadings is ultimately due to be entered against Defendants and in Auto-Owners' favor for the relief demanded in Auto-Owners' complaint, as amended. As a matter of law, Auto-Owners does not owe insurance coverage, a defense or indemnity and Auto-Owners does not have a duty to pay any damages, judgment or settlement for any of the claims, damages or events alleged in the underlying Hughes and Gassett lawsuits pending in the Circuit Court for Barbour County, Alabama.

Dated this the 6 th day of January , 2006.

Roger S. Morrow, MOR032

Joel H. Pearson, PEA019
Attorneys for Plaintiff, Auto-Owners Insurance
Company

OF COUNSEL:

MORROW, ROMINE & PEARSON, P.C.
P.O. Box 4804
Montgomery, Alabama 36103-4804
Telephone:    (334) 262-7707
Facsimile:     (334) 262-7742

### CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing upon the following by placing a copy of same in the United States mail, first class postage prepaid on this the 6th day of January , 2006.

Hon. Christina D. Crow
Jinks, Daniel & Crow, LLC
P.O. Box 350
Union Springs, AL 36089-0350

Hon. Richard M. Adams
Hon. James W. Parkman, III
Hon. William Calvin White, II
Parkman & Associates
739 West Main Street
Dothan, AL 36301

Of Counsel